| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| R. Scott Andrews, SBN: 219936<br>KIMBALL, TIREY & ST. JOHN LLP<br>2040 Main Street, Suite 500<br>Irvine, CA 92614<br>Tel: (949) 476-5585<br>Fax: (949) 476-5580<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Movant | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br>**Alexandra Lauren Burger** | CASE NO.: **8:25-bk-12832-SC**<br>CHAPTER: **7** |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l)**<br>**(with supporting declarations)**<br>**(UNLAWFUL DETAINER)** |
| Debtor(s). | DATE: **November 12, 2025**<br>TIME: **10:00 am**<br>COURTROOM: **5C**    on the **5TH** floor |
| Movant: **St. Moritz Lessee #1 LLC; St. Moritz Lessee #2 LLC** | |

1. **Hearing Location:**

   ☐ 255 East Temple Street, Los Angeles, CA 90012       ☑ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☑ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: **10/15/2025**

**Law Offices of Kimball, Tirey & St. John LLP**
Printed name of law firm (if applicable)

**R. Scott Andrews, SBN: 219936**
Printed name of individual Movant or attorney for Movant

 /s/ R. Scott Andrews
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 2                    **F 4001-1.RFS.UD.MOTION**

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER
CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY
(Unlawful Detainer)**

1. **Movant is the:**

   a. ☑ Owner of the Property
   b. ☐ Authorized Agent of the owner of the Property
   c. ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   Type of Property: ☑ Residential  ☐ Nonresidential

   *Street Address*:         **23411 Summerfield**
   *Unit/Suite Number*:   **5-D**
   *City, State, Zip Code*:   **Aliso Viejo, CA 92656**

3. **Bankruptcy Case History:**

   a. ☑ A voluntary  ☐ An involuntary  petition under chapter  ☑ 7  ☐ 11  ☐ 12  ☐ 13
   was filed on (*date*): **10/06/2025**

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13
   was entered on (*date*):

   c. ☐ A plan was confirmed on (*date*):

4. **Pursuant to 11.U.S.C. § 362(b)(22) and (23) there is no stay because (*check all that apply*):**

   a. ☐ Movant commenced an eviction, unlawful detainer action or similar proceeding against the Debtor involving
   residential property in which the Debtor resides and:

   (1) ☐ The Debtor has not filed and served on Movant the certification required under 11 U.S.C. § 362(l)(1).

   (2) ☐ The Debtor or adult dependent of the Debtor has not deposited with the clerk any rent that would become
   due during the 30-day period after the filing of the petition.

   (3) ☐ The Debtor or adult dependent of the Debtor has not filed and served on Movant the further certification
   required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has
   been cured.

   (4) ☐ Movant filed and served an objection to the Debtor's certification. A copy of the objection is attached as
   Exhibit _____. A hearing on this objection is set for (*date*) _____.

5. **Grounds for Relief from Stay: (*check all that apply*)**

   a. ☑ Pursuant to 11 U.S.C. § 362(d)(1), cause exists because, as of the bankruptcy petition date, the Debtor had
   no right to continued occupancy of the premises, as follows:

   (1) ☑ Movant caused a notice to quit to be served on the Debtor.

   (2) ☑ An unlawful detainer proceeding was commenced on (*date*) **10/01/2025** .

   (3) ☐ An unlawful detainer judgment was entered on (*date*) _____.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                        Page 3                                        **F 4001-1.RFS.UD.MOTION**

(4) ☐ Movant acquired title to the Property by foreclosure sale before the bankruptcy petition was filed and recorded the deed within the period provided by state law for perfection.

(5) ☐ Movant acquired title to the Property by foreclosure sale after the bankruptcy petition was filed and recorded the deed within the period provided by state law for perfection.

b. ☑ Pursuant to 11 U.S.C. § 362(d)(1) the Debtor's right to possession should be terminated because (*check all that apply*):

(1) ☐ The lease or other right of occupancy expired by its terms on (*date*) _____.

(2) ☐ The lease has matured, been rejected or deemed rejected by operation of law on (*date*) _____.

(3) ☑ Lease payments have not been made after the filing of the bankruptcy petition.

(4) ☐ An unlawful detainer action was filed to obtain possession of the Property on grounds of endangerment of the Property or because of illegal use of controlled substances on the Property and Movant filed and served upon the Debtor a certification that ☐ such an action was filed or ☐ that within the 30 days preceding the certification, the Debtor has endangered the subject Property or illegally allowed the use of controlled substances on the Property. A copy of Movant's certification is attached as Exhibit _____. The Debtor ☐ has ☐ has not filed an objection to Movant's certification. A copy of the Debtor's objection, if any, is attached as Exhibit _____. A hearing on this objection is set for (*date*) _____.

(5) ☐ The bankruptcy case was filed in bad faith.

(A) ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

(B) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

(C) ☐ The Debtor filed only a few case commencement documents. No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

(D) ☐ There was a recent transfer of all or part ownership of, or other interest in the Property without the consent of the Movant or court approval.

c. ☑ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

6. **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor:

a. ☐ These actions were taken before Movant knew the bankruptcy petition was filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other:

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

7. **Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.)*

    a. THE UNLAWFUL DETAINER DECLARATION on page 7.

    b. ☐ Supplemental declaration(s).

    c. ☑ Other *(specify)*:

        **Debtor was served on October 7, 2025, one day after the Bankruptcy was filed and before Movant had notice of the Bankruptcy filing.**

**Movant requests the following relief.**

1. Relief from stay pursuant to:  ☑ 11 U.S.C. § 362(d)(1)  ☑ 11 U.S.C. § 362(d)(2)

2. ☑ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to obtain possession of the Property.

3. ☐ Confirmation that there is no stay in effect.

4. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

5. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6. ☑ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing of this motion:
    ☐ without further notice.
    ☐ upon recording of a copy of the order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

8. ☐ Relief from stay is granted under 11 U.S.C. § 362(d)(4), if the order granting this motion is recorded in compliance with state laws governing notices of interest or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than two years after the date of entry of such order, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and a hearing.

9. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice.
    ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

10. ☐ The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and a hearing.

11. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 5                    **F 4001-1.RFS.UD.MOTION**

12. ☐ If relief from stay is not granted with respect to the Property because the Property is the subject of a lease that may be assumable;

   a. ☐ Establishment of a deadline for assumption or rejection of the lease.

   b. ☐ Adequate protection in the form of regular payments at the lease rate from petition date until assumption or rejection of the lease.

13. ☐ Other relief requested.

Date: __10/15/2025__

Law Office of Kimball, Tirey & St. John LLP
Print name of law firm (*if applicable*)

**R. Scott Andrews, SBN: 219936**
Print name of individual Movant or attorney for Movant (*if applicable*)

/s/ R. Scott Andrews
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 6                    **F 4001-1.RFS.UD.MOTION**

## UNLAWFUL DETAINER DECLARATION

I, (name of declarant) _Jennifer Tetley_____, declare as follows:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the Property because (specify):

    a.  ☐ I am the Movant and owner of the Property.

    b.  ☑ I manage the Property as the authorized agent for the Movant.

    c.  ☐ I am employed by Movant as (title and capacity):

    d.  ☐ Other (specify):

2.  a.  ☑ I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the rental of this Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐ Other (see attached):

3.  The Property is:

    ☑ Residential    ☐ Nonresidential

    **Street Address:**      **23411 Summerfield**
    **Unit/Suite Number:**   **5-D**
    **City, State, Zip Code:** **Aliso Viejo, CA 92656**

4.  Movant is the  ☑ legal owner of the Property, or  ☐ the owner's legally authorized agent. A true and correct copy of the trustee's deed upon sale, lease, rental agreement, or other document evidencing Movant's interest in the Property is attached as Exhibit __A__. A true and correct copy of the applicable document establishing Movant's authority as agent for the owner is attached as Exhibit _____.

5.  The Debtor asserts a possessory interest in the Property based upon:

    (1) ☐ a month-to-month tenancy
    (2) ☑ a lease that is in default
    (3) ☐ after a foreclosure sale that was held on (date): _____
    (4) ☐ other (specify):

6.  The Debtor failed to pay:

    a.  ☑ The monthly rent of $ **3,496.00**_____ beginning on (date): **09/03/2025**.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                          Page 7                          F 4001-1.RFS.UD.MOTION

b. ☐ Other obligations including:

    (1) ☐ Common area maintenance charges

    (2) ☐ Property taxes

    (3) ☐ Other obligations (specify):

7. **Procedural status**

a. ☐ The lease matured or was rejected on (date) _____:

    (1) ☐ by operation of law.

    (2) ☐ by order of the court.

b. ☑ Movant caused a notice to quit to be served upon the Debtor on (date) **09/12/2025**, and a true and correct copy is attached as Exhibit **B**.

c. ☑ Before the bankruptcy petition was filed:

    (1) ☑ Movant filed a complaint for unlawful detainer against the Debtor on (date) **10/01/2025**, and a true and correct copy is attached as Exhibit **C**.

    (2) ☐ Trial was held on (date) _____.

    (3) ☐ Trial was continued to (date) _____.

    (4) ☐ An unlawful detainer judgment against the Debtor was entered on the complaint for unlawful detainer on (date) _____, and a true and correct copy is attached as Exhibit _____.

    (5) ☐ A writ of possession for the Property was issued on (date) _____, and a true and correct copy is attached as Exhibit _____.

d. After the bankruptcy petition was filed:

    (1) ☐ The Debtor has not filed and served on the Movant the certification required under 11 U.S.C. § 362(l)(1).

    (2) ☐ The Debtor or adult dependent of the Debtor has not deposited with the clerk any rent that would become due during the 30-day period after the filing of the bankruptcy petition.

    (3) ☐ The Debtor or adult dependent of the Debtor has not filed and served on the Movant the further certification required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has been cured.

    (4) ☐ The Debtor filed and served on the Movant the certification required under 11 U.S.C. § 362(d)(1).

        (A) ☐ Movant filed and served an objection a copy of which is attached as Exhibit _____. A hearing on this objection is set for (date) _____.

        (B) ☐ Movant has not filed and served an objection.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 8                                   F 4001-1.RFS.UD.MOTION

(5) ☐ An unlawful detainer action was filed to obtain possession of the Property on grounds of endangerment of the Property or because of illegal use of controlled substances on the Property and Movant has filed a certification that ☐ such action was filed or ☐ that the Debtor has endangered the Property within 30 days preceding the certification or allowed the illegal use of controlled substances on the Property. A copy of Movant's certification is attached hereto as Exhibit _____. The Debtor ☐ has ☐ has not filed an objection to Movant's certification. A copy of the Debtor's objection, if filed, is attached as Exhibit ___. A hearing on this objection is set for: _____.

(6) ☑ Regular lease payments have not been made after the bankruptcy petition was filed.

8. ☐ The Debtor does not have an interest in the Property that could be assumed or assigned under 11 U.S.C. § 365.

9. ☑ The Property is not necessary to an effective reorganization because it is:

a. ☑ Residential, and is not producing income for the Debtor.

b. ☐ Commercial, but no reorganization is reasonably in prospect.

c. ☐ No longer property of the estate.

d. ☐ Other (specify):


10. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other (specify):


11. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page of facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property include:
(1) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.
(2) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                    Page 9                    F 4001-1.RFS.UD.MOTION

(3) Case name: _____

    Chapter: _____    Case number: _____

    Date filed: _____    Date discharged: _____    Date dismissed: _____

    Relief from stay regarding the Property ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

12. ☑ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☑ These actions were taken before Movant knew the bankruptcy petition was filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/15/2025 | Jennifer Tetley | _Jennifer T_ |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_June 2014_                        Page 10                    **F 4001-1.RFS.UD.MOTION**

# Exhibit A

# LEASE CONTRACT

**NAA**
NATIONAL APARTMENT ASSOCIATION

Date of Lease Contract: _____ **April 16, 2024** _____
(when the Lease Contract is filled out)

*This is a binding document.*
*Read carefully before signing.*

## Moving In — General Information

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between *you*, the resident(s) *(list all people signing the Lease Contract):*

**Alexandra Burger**

and *us*, the owner: **ST. MORITZ LESSEE #1 LLC & ST. MORITZ LESSEE #2 LLC**

*(name of title holder or published and recorded fictitious business name).* You've agreed to rent Unit No. _____ **05-005D** _____, at
**23411 Summerfield**

_____ *(street address)* in
**Aliso Viejo**
*(city)*, California, _____ **92656** _____ *(zip code)* (the "Dwelling") for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The dwelling will be occupied only by you and *(list all other occupants not signing the Lease Contract):*

No one else may occupy the dwelling. Persons not listed above must not stay in the dwelling for more than _____ **14** _____ consecutive days without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, two days per month is the limit.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the _____ **1st** _____ day of _____ **May** _____, **2024** , and ends at 11:59 p.m. the _____ **30th** _____ day of _____ **April** _____, **2025** .
**This lease contract will automatically renew month-to-month unless (1) either party gives at least _____ 30 _____ days written notice of termination, (2) Intent to Move-Out as Required by Paragraph 48 (Move-Out Notice), or (3) if this property is subject to the Tenant Protection Act of 2019, and you have a written lease terminated on or after January 1, 2020, we require you to execute a written extension or renewal of the lease for an additional term of similar duration with similar provisions, provided that those terms do not violate this section or any other provision of law.** If the number of days isn't filled in, at least 30 days written notice is required. If the Residents have been in possession for longer than one year, Landlord shall provide Residents with at least a 60 day written notice to terminate tenancy. Residents shall comply with all notice provisions in paragraph 32 (Default by Resident).

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the dwelling is $ _____ **1600.00** _____, due on or before the date this Lease Contract is signed. See paragraphs 52 (Security Deposit Deductions and Other Charges) and 53 (Deposit Return, Surrender, and Abandonment) for security deposit return information. The security deposit may not exceed 2 month's rent for an unfurnished dwelling, and 3 month's rent for a furnished dwelling. The security deposit may not exceed two and a half month's rent for an unfurnished dwelling, and three and a half month's rent for a furnished dwelling in the event you install water furniture.

**Santa Cruz County Residents.** You have the right to receive yearly interest on your security deposit at a rate of _____% . We may be liable for damages if we don't comply under Santa Cruz County Code §8.42 and Cal Civ. Code §1950.5.

**5. KEYS.** You will be provided _____ **2** _____ Dwelling key(s), _____ **2** _____ mailbox key(s), _____ **0** _____ FOB(s), and/or _____ **2** _____ other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is

© 2023, National Apartment Association, Inc. - 8/2023, California

☑ Blue Moon eSignature Services Document ID: 432745391

not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same. You agree not to clone or otherwise duplicate your assigned access device(s), Dwelling key(s), mailbox key(s), or FOB(s) without express written permission from us.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ __3210.00__ per month for rent, payable in advance and without demand:

☒ at the on-site manager's office, or
☒ at our online payment site, or
☐ at_____
_____
_____
_____
_____

Prorated rent of $ __3210.00__ is due for the remainder of *[check one]:* ☒ 1st month or ☐ 2nd month, on __May 1__ __2024__.

Otherwise, you must pay your rent on or before the __3rd__ day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. Rent is not considered accepted, if the payment/ACH is rejected, does not clear, or is stopped for any reason. If you don't pay all rent on or before the expiration of _____ days after the due date, you'll be delinquent. (If the previous field is blank, then your rent will be delinquent if it is not paid in full by the expiration of one business day after the due date.) You will be obligated to pay to us a fee of $ __50.00__ if you fail to pay any amount when due under this Contract. You agree that this amount is the result of our reasonable endeavor to approximate actual losses (administrative wages, interest on late rent accruing) caused by the late payment of rent. The Parties agree that it is impracticable and extremely difficult to affix the actual damage caused by payment of late rent. You'll also pay a charge of $25.00 for each returned check or rejected electronic payment. For additional returned checks you'll pay a charge of $35.00. If you are delinquent, all remedies under this Lease Contract will be authorized. If you are delinquent, all remedies under this Lease Contract and California law will be authorized. A negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill your credit obligations under this Lease. All payment obligations under this Lease Contract shall constitute rent under this Lease Contract.

☐ **Rent Concession.** If this box is checked, you and we have entered into an Addendum for a Rent Concession. The Addendum is attached. Please read it thoroughly.

**7. UTILITIES.** We'll pay for the following items, if checked:

☐ water;   ☐ gas;   ☐ electricity;
☐ master antenna   ☐ wastewater;
☐ trash;   ☐ cable TV;
☐ other_____
_____

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-powered lighting. If any utilities are submetered for the dwelling unit, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

**8. INSURANCE.** Our insurance does not cover the loss of your personal possessions or personal injury and it is recommended that you consider purchasing renter's insurance and flood insurance to insure your possessions from loss due to fire, flood, or other risk of loss. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

In addition, we urge all residents, and particularly those residing in coastal areas, areas near rivers, and areas prone to flooding, to obtain flood insurance. Renter's insurance may not cover damage to your property due to flooding. A flood insurance resource which may be available includes the National Flood Insurance Program managed by the Federal Emergency Management Agency (FEMA).

We ☐ require ☒ do not require you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

If renter's insurance is required, you shall maintain at all times during the Term of this Lease, at your sole expense, a renter's insurance policy, or its equivalent, issued by a licensed insurance company in a minimum policy coverage amount of $ _____ and you shall provide us with proof of such insurance to our satisfaction. If no box is checked, renter's insurance is not required.

Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable

☑ Blue Moon eSignature Services Document ID: 432745391

breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

The dwelling ☐ is ☒ is not located in a special flood hazard area or an area of potential flooding. We have knowledge that the dwelling is in a special flood hazard area if: (1) we received written notice from any public agency, or, (2) our mortgage holder requires us to carry flood insurance, or (3) we currently carry flood insurance. You may obtain more information about hazards, including flood hazards, that may affect your dwelling from the Internet Web site of the Office of Emergency Services (http://www.caloes.ca.gov/). The Internet Web site address for the MyHazards tool is http://myhazards.caloes.ca.gov/. Our insurance does not cover the loss of the tenant's personal possessions. We recommend that you consider purchasing renter's insurance and flood insurance to insure your possessions from loss due to fire, flood, or other risk of loss. We are not required to provide additional information concerning the flood hazards to the property. The information provided herein is deemed adequate to inform you.

**9. LOCKS AND LATCHES.** We will provide an operable deadbolt lock on each main swinging entry door of the dwelling in compliance with California Civil Code, Section 1941.3, subject to statutory exceptions. We will provide window security or locking devices as required by that statute. Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move in. You must notify us immediately of any inoperable door, window, latch, or lock. You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

**Payment for Rekeying, Repairs, Etc.** Unless otherwise required by law, you must pay for all repairs or replacements arising from misuse or damage to devices by you or your household members, occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

## Special Provisions and "What If" Clauses

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

_____
_____
_____
_____
_____
_____
_____
_____

See any additional special provisions.

**11. EARLY MOVE-OUT.** If you move out early without our written consent or without paying us a negotiated lease termination fee, you will be liable to us for actual damages, including liability for rents during the entire remainder of your lease term (less mitigation) and for the cost of finding and processing a replacement resident, paying locator service fees, cleaning, make-ready costs, etc. In addition to any other rights and remedies allowed by law, we shall have the remedy set forth in Civil Code Section 1951.2.

**12. REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the Community due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. <u>Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from you or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your dwelling.</u> We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**13. PROPERTY LEFT IN DWELLING.**

**Storage After Surrender, Abandonment, or Eviction.** We may remove and/or store all property remaining in the dwelling or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the dwelling (see definitions in paragraph 53 (Deposit Return, Surrender, and Abandonment)). We will use reasonable care in storing the property; but we're not liable for casualty loss, damage, or theft unless caused by deliberate or negligent act on our part. We may store the property either in the dwelling or in another safe place until (1) we release the personal property described in the notice to you or other persons we reasonably believe to be the owner of the property and we shall not require you to pay the cost of

☑ Blue Moon eSignature Services Document ID: 432745391

storage if its owner reclaims the property within two days of you vacating the dwelling, (2) charges (and actual advertising/sale expenses are paid in full after 2 days, or (3) 18 days have elapsed after "Notice of Right to Reclaim Abandoned Property" has been mailed (or 15 days after it is personally served) by us, as provided below as otherwise required by law.

**Notice.** The "Notice of Right to Reclaim Abandoned Property" must be in substantial compliance with the statutory form in Section 1984 or 1985, California Civil Code. The notice must be given by personal delivery to you or via regular U.S. mail to you at your last known address or to the person believed by us to be the owner.

**Redemption.** If we've stored property as provided above, you or the person believed by us to be the owner may redeem the property by paying all storage charges (and any actual advertising/sale expenses) on or before the expiration of the Notice of Right to Reclaim Abandoned Property as required by law. The charges for storage will be the fair rental value of the rental space reasonably required for the storage. We may return redeemed property at the place of storage, the management office, or the dwelling (at our option). We may require payment by cash, money order, or certified check. We may also send a copy to your email address.

**Other disposition or Sale.** If all the property being stored is believed by us to be worth less than $700 and it has not been redeemed, we may keep, throw away, or give away the property after the 18th day following the giving of the "Notice of Right to Reclaim Abandoned Property" above. If all of the property is believed by us to be worth $700 or more, we may (1) release the personal property described in the notice to the former tenant and shall not require the former tenant to pay the cost of storage if the property remained in the dwelling and the former tenant or other person reasonably believed by the landlord to be its owner reclaims the property within two days of vacating the dwelling, (2) we release the property to the person believed by us to be the owner, if all storage charges (and actual advertising/sale expenses) are paid in full after 2 days of storage, or (3) sell the property at public sale in compliance with the procedures of Section 1988 of the California Civil Code. Sale may be subject to any third-party ownership or lien claims, must be to the highest cash bidder, and may be in bulk, in batches, or item-by-item. You and the landlord may bid at the sale. Excess sums will be paid over to the county in accordance with statute.

State law permits former tenants to reclaim abandoned personal property left at the former address of the tenant, subject to certain conditions. You may or may not be able to reclaim property without incurring additional costs, depending on the cost of storing the property and the length of time before it is reclaimed. In general, these costs will be lower the sooner you contact your former landlord after being notified that property belonging to you was left behind after you moved out.

**14. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, we may end your right of occupancy and recover damages, including future rents (less any mitigation), reletting charges, attorney's fees (consistent with paragraph 32 (Default by Resident)), court costs, and other lawful charges. Our rights and remedies under paragraphs 11 (Early Move-Out) and 32 (Default by Resident) apply to the failure to pay first month's rent upon execution of the Lease Contract.

**15. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10 (Special Provisions), by a written addendum or amendment signed by you and us, or by reasonable changes of dwelling rules allowed under paragraph 19 (Community Policies or Rules), or as otherwise allowed by law. We will give you a minimum of 30 days notice if you are on a month to month tenancy before we increase the rent (a maximum of 10% increase over the previous 12 months). We will give you at least 90 days notice during a month to month tenancy before we raise the rent more than 10% (over the previous 12 months), unless the increase is caused by a change in your income or family composition as determined by a recertification required by statute or regulation.

**16. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Any termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or lease termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the dwelling.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the dwelling is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the Lease Contract begins—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the dwelling will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the beginning of the lease term and the notice states that construction delay is expected and that the dwelling will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new beginning date of the lease term for all purposes. This new date may not be moved to an earlier date unless we and you agree.

© 2023, National Apartment Association, Inc. - 8/2023, California

☑ Blue Moon eSignature Services Document ID: 432745391

**17. AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment unit itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge as Additional Rent, during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay, as Additional Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

**18. DISCLOSURE RIGHTS.** During your initial lease application and throughout your tenancy, we may obtain information on you, your rental history, or other personal information that may be provided to law-enforcement, government agencies, or other business entities for other business purposes, at a third party's request. Upon verifiable request from you, we will provide you with any personal information collected, or disclosed for business purposes relating to you, including but not limited to: categories and specific pieces of personal information collected, the categories of sources from which the personal information is collected, the business or commercial purpose for collecting or selling personal information, and the categories of third parties with which we share personal information.

**(A)** Should we choose to collect your personal information, we will, at or before the point of collection, inform you as to the categories of personal information to be collected and the purposes for which the categories of personal information will be used. Upon verifiable request from you, we will disclose and deliver the personal information the we collected about you, free of charge, within 45 days of the verified request.

**(B)** Upon verifiable request from you to delete personal information from our records, we will do so, and direct service providers to delete any personal information in their records, subject to certain exceptions.

**(C)** We will not sell personal information to third parties.

**(D)** We do not discriminate against any resident that exercises any of their rights under the California Consumer Privacy Act ("CCPA"). However, we may charge different prices or provide a different quality of goods or services if the difference is reasonably related to the value provided to you by your data. Further, we may offer financial incentives to you for the collection, sale, or deletion of personal information.

**(E)** The obligations imposed on us by the CCPA cannot, and will not, restrict our ability to comply with federal, state, or local laws; comply with civil, criminal, or regulatory inquiry, investigation, subpoena, or summons by with federal, state, or local authorities; cooperate with law enforcement relating to violations of with federal, state, or local laws; exercise legal claims; collect, use, retain, sell, or disclose aggregate or deidentified consumer information; or collect or sell personal information where that information is based on commercial conduct wholly outside of California.

## While You're Living in the Dwelling Unit

**19. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written Community rules, regulations and policies, including instructions for care of the dwelling and the Community. Our rules and Community Policies are considered part of this Lease Contract and are incorporated herein as fully set out word for word. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the Community and do not change dollar amounts on page 1 of this Lease Contract.

**20. LIMITATIONS ON CONDUCT.** The dwelling and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Doors, windows, and other passageways

inside the dwelling must be clear and unobstructed for access to every room in the dwelling, and may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. You must maintain the dwelling free from clutter or any other condition which may restrict air flow, encourage mold growth, invite pests, creates a fire hazard, or otherwise degrades the habitability of the dwelling. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with dwelling rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the Community: use candles

☑ Blue Moon eSignature Services Document ID: 432745391

or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Unless otherwise provided by law, conducting any kind of business in your dwelling or in the Community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your dwelling for business purposes. You or your guests may not use the dwelling, or any other part of the property, to violate, or in violation of, any law, statute, or ordinance. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the Community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any dwelling rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the Community.

21. **PROHIBITED CONDUCT.** You, your occupants or guests, or the guests of any occupants, may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the Community; disrupting our business activities; manufacturing, cultivating, delivering, selling, possessing with intent to deliver or sell, or otherwise possessing or using a controlled substance or drug paraphernalia for use with a controlled substance (Note: "Controlled substance" includes so-called "medical marijuana" under the law of California and any state having similar laws. The Resident agrees not to violate any law or ordinance. Marijuana is listed as a Class 1 scheduled drug under federal law, and is a prohibited controlled substance. (21 United States Code sections 801-904: 21 United States Code section 841(a)(1); 21 United States Code section 812(b)(1)); engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the Community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the Community; or injuring our reputation by making bad faith allegations against us to others.

22. **PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the Community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license plate or no current registration and/or inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the dwelling; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office;or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a resident and is parked in a visitor or retail parking space.

23. **RELEASE OF RESIDENT.** Unless entitled to terminate this Lease Contract by law or pursuant to its terms, you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, or death.

24. **MILITARY PERSONNEL CLAUSE.** All parties to this Lease Contract agree to comply with any federal law, including, but not limited to the Service Member's Civil Relief Act, or any applicable state law(s), if you are seeking to terminate this Lease Contract and/or subsequent renewals and/or Lease Contract extensions under the rights granted by such laws.

25. **RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other access control devices.

**Smoke and Carbon Monoxide Detectors.** We'll furnish smoke and carbon monoxide detectors only if required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must test the smoke detectors and the carbon monoxide detectors on a regular basis, and pay for and replace batteries as needed, unless the law provides otherwise. You must immediately report smoke and carbon monoxide detector malfunctions to us. Neither you nor others may disable neither the smoke nor the carbon monoxide detectors. If you disable or damage the smoke detector or carbon monoxide detector, or fail to replace a dead battery or report known

☑ Blue Moon eSignature Services Document ID: 432745391

smoke and carbon monoxide detector malfunctions to us, and if your action or inaction causes loss, damage, or fines from fire, smoke, or water to us or others, you will be liable for such loss, damage, or fines.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. We are not responsible for the acceptance or receipt of any mail, messages, or packages left at the entrances to the dwelling or elsewhere on the property, or for any loss or damage to those items or any other material that is delivered to the property. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. During freezing weather, you must ensure that the temperature in the Dwelling is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your dwelling, you'll be liable for damage to our and other's property. You agree to indemnify and hold us harmless from any claims, loses, or expenses (including attorney's fees) that we may incur as result of your negligence, or the negligence of your guests, invitees, or occupants in the dwelling, such as damage is caused by broken water pipes due to your violating these requirements. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the Community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

**Compliance with Statutory Obligations.** You hereby understand and acknowledge that you have an affirmative duty to comply with the obligations set forth in California Civil Code Section 1941.2:

(1) To keep the dwelling clean and sanitary as the condition of the dwelling permits.

(2) To dispose all rubbish, garbage and other waste, in a clean and sanitary manner.

(3) To properly use and operate all electrical, gas and plumbing fixtures and keep them as clean and sanitary as their condition permits.

(4) Not to permit any person, with his permission, to willfully or wantonly destroy, deface, damage, impair or remove any part of the Community or dwelling unit or the facilities, equipment, or appurtenances thereto, nor himself do any such thing.

(5) To occupy the dwelling as his abode, utilizing portions thereof for living, sleeping, cooking or dining purposes only which were respectively designed or intended to be used for such occupancies.

26. **CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the dwelling, fixtures, and furniture as is, except for conditions causing the premises to be untenantable under California Civil Code 1941. You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the dwelling and not damaging or littering the Community. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter the dwelling or Community. No holes or stickers are allowed inside or outside the dwelling. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless permission is statutorily required or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the dwelling; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the dwelling (whether or not we consent) become ours unless we agree otherwise in writing.

☑ Blue Moon eSignature Services Document ID: 432745391

**27. REQUESTS, REPAIRS, AND MALFUNCTIONS. IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE TENANT/ MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE.** (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the dwelling if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate your tenancy within a reasonable time by giving you written notice. If your tenancy is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**28. ANIMALS.** Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the Dwelling Unit or Community unless we've so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contact. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. We will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. If you or any guest or occupant violates the animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the dwelling unit at any time during your term of occupancy (with or without our consent), we'll charge you for any necessary defleaing, deodorizing, and shampooing. You must not feed stray or wild animals.

**29. WHEN WE MAY ENTER.** Landlord will have the right to enter the premises as allowed by law. Law permits entry in case of emergency to make necessary or agreed repairs, decorations, alterations or improvements, supply necessary or agreed services, to test smoke and carbon monoxide detectors, or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workmen or contractors or to make an inspection pursuant to subdivision (f) of Civil Code §1950.5, when the Resident has abandoned or surrendered the premises and pursuant to court order. Landlord will serve Resident with written notice before entry unless:

- Entry is due to an emergency, surrender or abandonment of the unit, or
- Resident and Landlord agree orally to an entry to make agreed repairs or supply agreed services at an approximate day and time within one week of the oral agreement, or
- Resident is present and consents to entry at the time of entry, or
- To exhibit the unit to prospective or actual purchasers of the property, provided that Landlord has notified Resident in writing within 120 days of the oral notice that the property is for sale and that Resident may be contacted to allow for an inspection.
- Entry to inspect a tenant's dwelling unit shall comply with Section 1954. Entry to inspect any unit selected by the pest control operator and to conduct followup inspections of surrounding units until bed bugs are eliminated is a necessary service for the purpose of Section 1954. Tenants shall cooperate with the inspection to facilitate the detection and treatment of bed bugs, including providing requested information that is necessary to facilitate the detection and treatment of bed bugs to the pest control operator.

The landlord shall notify the tenants of those units inspected by the pest control operator pursuant to Section 1954.604 of the pest control operator's findings. The notification shall be in writing and made within two business days of receipt of the pest control operator's findings. For confirmed infestations in common areas, all tenants shall be provided notice of the pest control operator's findings.

© 2023, National Apartment Association, Inc. - 8/2023, California

☑ Blue Moon eSignature Services Document ID: 432745391

**30. JOINT AND SEVERAL RESPONSIBILITY.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of lease termination, repair requests, and entry permissions) constitute notice from all residents. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 53 (Deposit Return, Surrender, and Abandonment).

**31. ASSIGNMENT AND SUBLETTING.** You may not assign or sublet any portion or the entire dwelling, except to the extent required by law. We intend this to be a strict and absolute prohibition against subletting and assignment. We will not acknowledge, communicate, or accept rent from any person other than you. All guests, residents, occupants, subtenants, or assignees in the dwelling must comply with every term of this Lease. If you no longer permanently reside in the dwelling, we reserve the right to raise the rent and collect rent from any subsequent occupants. You must notify us in writing if you no longer permanently reside in the dwelling, or if it is no longer your principal place of occupancy. You may still be liable for the entire Lease Contract term if you move out early (see paragraph 48 Move-Out Notice).

## Responsibilities of Owner and Resident

**32. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the Community rules, or fire, safety, health, or criminal laws, regardless of whether arrest or conviction occurs; (3) you abandon the dwelling; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (6) any illegal drugs or paraphernalia are found in your dwelling; (7) you or any guest or occupant engages in any of the prohibited conduct described in paragraphs 20 (Limitations on Conduct) or 21 (Prohibited Conduct); or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government. Any of the above defaults shall be a material breach of the Lease and shall be a just cause to evict you from the dwelling.

**Eviction.** If you default and if we wish to terminate your right of occupancy, we must give you a 3 Court day written notice to cure the default. If the default is incurable (i.e. assigning or subletting or committing waste upon the demised premises, contrary to the conditions or covenants of this Lease, or maintaining, committing, or permitting the maintenance or commission of a nuisance upon the demised premises, or using the premises for an unlawful purpose, or any other incurable default), we may end your right of occupancy by giving you a 3-day notice to vacate. Notice to cure and notice of occupancy termination must be delivered by either: (1) personal delivery to any resident; or (2) personal delivery at the dwelling to any occupant of suitable age and discretion and sending a copy through the regular U.S. mail addressed to the tenant at his or her place of residence; or (3) posting on the outside of the dwelling's front door, accompanied by mailing the notice by regular U.S. mail. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other lease obligations.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of holdover (less any mitigation); and (3) at our option, we may extend the lease term—for up to one month from the date of notice of lease extension—by delivering written notice to you or your dwelling while you continue to hold over.

**Other Remedies.** If your rent is delinquent and we give you 3 days' prior written notice, we may report unpaid amounts to consumer reporting agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10 (Special Provisions), in addition to other sums due. Upon your default, we have all other legal remedies including lease termination, lockout under statute, and the remedy set forth in Civil Code § 1951.2. The prevailing party may recover from a non-prevailing party attorney's fees and any costs of litigation in an amount of no more than $1800. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 10% interest per year from due date. To the greatest extent allowed by law, you must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline. If you fail to fulfill your obligations under

☑ Blue Moon eSignature Services Document ID: 432745391

this Lease, we intend to submit a negative report to a consumer reporting agency. The report will summarize your violations and be a possible reflection on your credit record.

**Remedies Cumulative.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

## General Clauses

**33. ENTIRE AGREEMENT.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**34. NO AUTHORITY TO AMEND UNLESS IN WRITING.** Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.

**35. NO WAIVER.** No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, liens, or other rights isn't a waiver under any circumstances.

**36. NOTICE.** Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo or letter that was given. Fax signatures are binding. All notices must be signed.

**37. MISCELLANEOUS.**
A. Exercising one remedy won't constitute an election or waiver of other remedies.
B. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties.
C. All remedies are cumulative.
D. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.
E. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.
F. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.
G. This Lease Contract is subordinate or superior to existing and future recorded mortgages or deeds of trust, at our lender's option.
H. All lease obligations must be performed in the county where the Dwelling is located.
I. Upon our request, resident shall provide us with a Tenant Estoppel Certificate.
J. All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**38. REGISTERED SEX OFFENDER NOTICE.** Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the Community of residence and ZIP Code in which he or she resides.

**39. PROPOSITION 65 WARNING.** Proposition 65 protects California's drinking water sources from being contaminated with chemicals known to cause cancer, birth defects or other reproductive harm, and requires businesses to inform Californians about exposures to such chemicals. Please see the California Proposition 65 Addendum for warnings and additional information.

**40. NOTICE OF NEGATIVE CREDIT REPORT.** Pursuant to California Civil Code § 1785.26, you are hereby notified that a negative report reflecting on your credit record may be submitted to credit-reporting agencies if you fail to fulfill the terms of your obligation under this Lease Contract.

**41. INDEMNIFICATION.** Subject to applicable law, you shall indemnify and hold the owner, its agents and employees, harmless against all claims, expenses, damages, actions, and liabilities of whatever nature, including reasonable attorney's fees, arising from or relating to injury, loss or damage relating to your, your guest's or occupant's negligence, tenancy and/or your failure to comply with this Lease Contract.

**42. CONTACTING YOU.** By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change your contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**43. OBLIGATION TO VACATE.** If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with paragraph 3 (Lease Term), and we accept such

☑ Blue Moon eSignature Services Document ID: 432745391

written notice, then you are required to vacate the dwelling and remove all of your personal property therefrom at the expiration of the Lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

44. **FORCE MAJEURE.** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

45. **POLITICAL SIGNS.** You may post or display political signs relating to an election, legislative vote, initiative, referendum, recall process or issues that are before a public commission, public board or elected local body for a vote as allowed by law. Political signs may be posted in the window or on the door of the dwelling. All political signs must be six square feet or less in size and cannot be posted or displayed in a manner that would violate a local, state or federal law. You must post and remove political signs in compliance with the time limits set by local ordinance. If no local ordinance exists, political signs may be posted no earlier than 90 days prior to the date of the election or vote and must be removed within 15 days of the date of the election or vote.

46. **PAYMENTS.** At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 (Property Left in Dwelling) or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments. We will accept rent payments from a third party, if the third-party signs an acknowledgment stating 1) the third party is not a current tenant of the property and 2) that acceptance does not establish a tenancy.

47. **ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local dwelling (multi-housing) associations for the area where the dwelling is located.

## When Moving Out

48. **MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give our representative advance written notice of your intention to vacate as required by the paragraph 3 (Lease Term). The advance notice must be at least the number of days of notice required in paragraph 3 (Lease Terms). The move-out date in your notice *[check one]*: ❑ must be the last day of the month, or ☒ may be the exact day designated in your notice. If neither box is checked, the second checkbox applies. If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the entire Lease Contract term if you move out early under paragraph 23 (Release of Resident), except if you are able to terminate your tenancy under the statutory rights explained in paragraphs 11 (Early Move-Out), 23 (Release of Resident), or under other laws providing a right to terminate this Lease Contract. All notices to vacate must be in writing and must provide the date by which you intend to vacate. If the notice does not comply with the time requirements of the Lease Terms paragraph, even if you move by the last date in the lease term, you will be responsible for an additional month's rent.

If you fail to vacate by the date set forth in your notice, you will automatically and immediately become a holdover tenant pursuant to state law, and we will have all remedies available under this Lease Contract and state law.

49. **MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. Early move-out may result in reletting charges and liability for future rent under paragraphs 11 (Early Move-Out) and 32 (Default by Resident). You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

50. **CLEANING.** You must thoroughly clean the dwelling, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

☑ Blue Moon eSignature Services Document ID: 432745391

**51. MOVE-OUT INSPECTION.** California law provides that you have a right to a pre-move-out inspection and we will give notice of such right. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**52. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You may not use the security deposit to pay any month's rent. We may withhold from the security deposit only such amounts as are reasonably necessary to remedy your defaults including, but not limited to, the following:

a) Defaults in the payment of rent;

b) To repair damage to the premises caused by you, exclusive of ordinary wear and tear, and/or;

c) To clean the premises, if necessary, upon termination of the tenancy in order to return the unit to the same level of cleanliness it was in at the inception of the tenancy, and /or;

d) To restore, replace, or return personal property or appurtenances, exclusive of ordinary wear and tear.

**53. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** You are required to provide us written notice of your forwarding address, on or before termination of this Lease Contract. We'll mail you, to the forwarding address you provide, your security deposit refund (less lawful deductions) and an itemized accounting of any deductions within 21 days after surrender or abandonment, unless statutes provide otherwise. If you fail to provide us with your forwarding address in writing, as required above, we will process the unclaimed security deposit in accordance with state law.

**Surrender.** You have surrendered the dwelling when: (1) the move-out date has passed and no one is living in the dwelling in our reasonable judgment; (2) all dwelling keys and access devices listed in paragraph 5 (Keys) have been turned in where rent is paid—whichever date occurs first, or (3) we reasonably believe that you have surrendered the dwelling to us.

**Abandonment.** You have abandoned the dwelling when we reasonably believe you have abandoned it. California law provides that abandonment will be found when all of the following have occurred: (1) your rent has been due and unpaid for at least 14 days; (2) we give you written notice of such belief and our intent to terminate the lease because of your delinquency; (3) our notice of abandonment follows substantially the form in California Code Section 1951.3(d); (4) such notice is given by (i) personal delivery to you, or (ii) first class mail, postage prepaid to your last known address; (5) the lease termination date in that notice is at least 15 days after personal delivery or 18 days after mailing; and (6) such 15 or 18 day notice period has expired without response from you as per California Code Section 1951.3. If we have reason to believe you won't receive the notice at your last known address, we will, at the same time we mail the above notice to your last known address, mail a copy to any other addresses that are known to us where you could reasonably be expected to receive the notice.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the dwelling; determine any security deposit deductions; and remove property left in the dwelling. Surrender, abandonment, and judicial eviction affect your rights to property left in the dwelling (paragraph 13 (Property Left In Dwelling)), but do not affect our mitigation obligations (paragraph 32 (Default by Resident)).

## Severability, Originals and Attachments, and Signatures

**54. SEVERABILITY.** If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

**55. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a

copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations. A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

> You are legally bound by this document.
> Read it carefully before signing.

**Name and address of locator service** *(if applicable)*

_____

_____

_____

_____

**Date form is filled out** *(same as on top of page 1)*

04/16/2024
_____

☑ Blue Moon eSignature Services Document ID: 432745391

**(Required by Cal. Civil Code Section 1962)**
Name, address and telephone number of Owner or Owner's Agent:

Greystar California, Inc.
620 Newport Center Dr 15th Floor
Newport Beach, CA 92660
(949)705-0010

Name, address and telephone number of person or entity to whom payments must be made:

St. Moritz
23411 Summerfield
Aliso Viejo, CA 92656
(949)362-6000

Acceptable forms of payment:

ACH, Credit Card, Certified Check

Rent Payments may be made personally ☒ Yes ☐ No
If yes, the person authorized to accept payments will be available

Monday-Saturday, 9am to 6pm and Sunday, 12pm to 5pm

(usual days and hours authorized person will be available to accept payment).

**THIS LEASE CONTRACT WILL AUTOMATICALLY CONTINUE AS A TENANCY FROM MONTH TO MONTH AT THE EXPIRATION OF THE INITIAL LEASE TERM UNLESS (1) PROPER MOVE-OUT OR VACATE NOTICE IS GIVEN UNDER PARAGRAPH 48 (MOVE-OUT NOTICE), OR (2) YOU AND WE AGREE OTHERWISE IN WRITING.**

**Resident or Residents** *(all sign below)*

*Alexandra Burger*

**Owner or Owner's Representative**
*(signing as agent for and on behalf of Owner)*

*Tasha Gray*

Address and phone number of owner's representative for notice purposes

23411 Summerfield
Aliso Viejo, CA 92656
(949)362-6000

**SPECIAL PROVISIONS** *(CONTINUED FROM PARAGRAPH 10)*

# Exhibit B

# NOTICE TO PAY RENT OR QUIT

To: Alexandra Burger

and all other in possession of the premises located at:

*23411 Summerfield Apt 005D Aliso Viejo, CA 92656*

**WITHIN THREE (3) DAYS, excluding Saturdays and Sundays and other judicial holidays, after the service on you of this notice on Friday, September 12, 2025, you are hereby required to do one of the following:**

(1) Pay the delinquent rent of the premises described herein, of which you now hold possession, as follows:

| Date Amount Became Due | Amount |
|---|---|
| September 3, 2025 | $3,496.00 |

### Total Delinquent Rent: $3,496.00

Landlord reserves the right to pursue any amounts not included in this notice in accordance with the law.

Payment must be delivered as follows:

☒    By mail to: 23411 Summerfield, Aliso Viejo, CA 92656

☒    By delivering in person to: Jennifer Tetley or any available personnel at 23411 Summerfield, Aliso Viejo, CA 92656 between the hours of 9:00 a.m. to 6:00 p.m. on the following days of the week Monday through Saturday; and 12:00pm to 5:00 p.m. Sunday. Said employee may be reached by telephone at 949-362-6000.

☒    To the 24-hour drop box located at the Leasing Office during non-business hours at 23411 Summerfield, Aliso Viejo, CA 92656.

☒    *PAYMENT MUST BE MADE BY CASHIER'S CHECK. NO PERSONAL CHECKS OR ONLINE PAYMENTS WILL BE ACCEPTED.*

Name of an Agent for Landlord: Jennifer Tetley
Telephone Number: 949-362-6000

**2. Or deliver up possession of the premises described herein to St. Moritz Lessee #1 LLC, who/which is authorized to receive the same.**

If you fail to perform or otherwise comply with this Notice, the Owner/Agent does hereby elect to declare the forfeiture of your Rental Agreement under which you hold possession of the above-described premises and will institute legal proceedings against you to recover possession of said premises and to recover all delinquent rent demanded herein, court costs and attorneys' fees as permitted by law.

Dated: September 12, 2025

By: Jennifer Tevey
Agent for Landlord/Owner

[For Landlord Use Only]
**PROOF OF SERVICE**

Document(s) served: **NOTICE TO PAY RENT OR QUIT**

Parties served: **Alexandra Burger**

and all tenants, subtenants, and others in possession

Subject property: **23411 Summerfield Apt #005D Aliso Viejo, CA 92656**

Date of service: September 12, 2025

I served copies of the above-referenced document(s) in the manner indicated below:

☐ **BY PERSONAL SERVICE.** On the date set forth above, I personally delivered copies of the document(s) to the following occupant(s): _____
_____.

☐ **BY SUBSTITUTED SERVICE.** On the date set forth above, I left copies of the document(s) for each of the above-referenced occupant(s) with _____, a person of suitable age and discretion at the residence or usual place of business of the occupant(s), each being absent therefrom (except to the extent any occupants were served by personal service, see above); AND I mailed copies to each occupant by first class mail on said date by depositing said copies in the United States Mail, in a sealed envelope, with postage fully prepaid, addressed to the above-named occupant(s) at their place of residence.

☒ **BY POSTING AND MAILING.** On the date set forth above, I posted copies of the document(s) in a conspicuous place on the above-referenced property, there being no person of suitable age or discretion to be found at any known place of residence or business of the occupant(s); AND I mailed copies to each occupant by first class mail on said date by depositing said copies in the United States Mail, in a sealed envelope, with postage fully prepaid, addressed to the above-named occupant(s) at the place where the property is situated.

At the time of service, I was at least 18 years of age.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct and if called as a witness to testify thereto, I could do so competently.

Executed on September 12, 2025          in Aliso Viejo, California.

Signature: _____

Print Name: Jennifer Tetley

Exhibit C

Case 8:25-bk-12832-SC    Doc 9    Filed 10/16/25    Entered 10/16/25 11:00:50    Desc

Electronically Filed by Superior Court of California, County of Orange, 10/01/2025 02:02:57 PM.
30-2025-01515803-CL-UD-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By D. Cuevas, Deputy Clerk.

**UD-100**

| ATTORNEY OR PARTY WITHOUT ATTORNEY         STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|
| NAME: Danielle T. Kussler #180144/Susan E. Greek #126739 | |

NAME: Danielle T. Kussler #180144/Susan E. Greek #126739
FIRM NAME: Kimball, Tirey & St. John LLP
STREET ADDRESS: 2040 Main Street, Suite 500
CITY: Irvine          STATE: CA  ZIP CODE: 92614
TELEPHONE NO.: (949) 476-5585     FAX NO.: (949) 476-5580
EMAIL ADDRESS: OCefiling@kts-law.com
ATTORNEY FOR (name): Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 CIVIC CENTER DRIVE WEST
MAILING ADDRESS:
CITY AND ZIP CODE: SANTA ANA, CA 92701
BRANCH NAME: CENTRAL JUSTICE CENTER

PLAINTIFF: St. Moritz Lessee #1 LLC; St. Moritz Lessee #2 LLC
DEFENDANT: Alexandra Burger
[X] DOES 1 TO  10 inclusive

Dept. C61

| COMPLAINT—UNLAWFUL DETAINER* | CASE NUMBER: |
|---|---|
| [X] COMPLAINT   [ ] AMENDED COMPLAINT (Amendment Number): | 30-2025-01515803-CL-UD-CJC |

**Jurisdiction** (check all that apply):
[X] ACTION IS A LIMITED CIVIL CASE (amount demanded does not exceed $35,000)
Amount demanded     [ ] does not exceed $10,000
                    [X] exceeds $10,000

[ ] ACTION IS AN UNLIMITED CIVIL CASE (amount demanded exceeds $35,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint or cross-complaint (check all that apply):
    [ ] from unlawful detainer to general unlimited civil (possession not in issue).      [ ] from limited to unlimited.
    [ ] from unlawful detainer to general limited civil (possession not in issue).        [ ] from unlimited to limited.

1. PLAINTIFF (name each):
   St. Moritz Lessee #1 LLC; St. Moritz Lessee #2 LLC

   alleges causes of action against DEFENDANT (name each):
   Alexandra Burger

2. a. Plaintiff is    (1) [ ] an individual over the age of 18 years.    (4) [ ] a partnership.
                      (2) [ ] a public agency.                          (5) [ ] a corporation.
                      (3) [X] other (specify): Limited Liability Company

   b. [ ] Plaintiff has complied with the fictitious business name laws and is doing business under the fictitious name of (specify):

3. a. The venue is the court named above because defendant named above is in possession of the premises located at (street
      address, apt. no., city, zip code, and county):
      23411 Summerfield #5-D
      Aliso Viejo, Orange County, CA 92656
      County of Orange
   b. The premises in 3a are (check one)
      (1) [X] within the city limits of (name of city): Aliso Viejo
      (2) [ ] within the unincorporated area of (name of county):
   c. The premises in 3a were constructed in (approximate year):    1991

4. Plaintiff's interest in the premises is    [ ] as owner   [X] other (specify): Other

5. The true names and capacities of defendants sued as Does are unknown to plaintiff.

**\*NOTE: Do not use this form for evictions after sale (Code Civ. Proc., § 1161a).**

Page 1 of 4

Form Approved for Optional Use
Judicial Council of California
UD–100 [Rev. January 1, 2024]

**COMPLAINT — UNLAWFUL DETAINER**

Civil Code, § 1940 et seq.
Code of Civil Procedure, §§ 425.12, 1166
www.courts.ca.gov

[ ] CEB| Essential
ceb.com | [ ]Forms

25-3271406

**UD-100**

| | |
|---|---|
| PLAINTIFF: St. Moritz Lessee #1 LLC; St. Moritz Lessee #2 LLC<br>DEFENDANT: Alexandra Burger | CASE NUMBER: |

6.  a.  On or about *(date):*  05/01/2024
     *defendant (name each):*
     **Alexandra Burger**

     (1)  agreed to rent the premises as a  ☐ month-to-month tenancy  ☒ other tenancy *(specify):*  1 Year
     (2)  agreed to pay rent of $                     3,210.00 payable ☐ monthly  ☒ other *(specify frequency):*  Third
     (3)  agreed to pay rent on the ☐ first of the month  ☒ other day *(specify):*  Third
   b.  This ☒ written  ☐ oral  agreement was made with
     (1) ☒ plaintiff.               (3) ☐ plaintiff's predecessor in interest.
     (2) ☐ plaintiff's agent.       (4) ☐ Other *(specify):*
   c.  ☒ The defendants not named in item 6a are
     (1) ☐ subtenants.
     (2) ☐ assignees.
     (3) ☒ Other *(specify):*  Unknown
   d.  ☒ The agreement was later changed as follows *(specify):*
        Rent was adjusted to $3496.00 per month, Effective 05/01/2025. In accordance with California Law.

   e.  ☐ A copy of the written agreement, including any addenda or attachments that form the basis of this complaint, is attached
        and labeled Exhibit 1. *(Required for residential property, unless item 6f is checked. See Code Civ. Proc., § 1166.)*
   f.  ☒ *(For residential property)* A copy of the written agreement is **not** attached because *(specify reason):*
     (1) ☐ the written agreement is not in the possession of the landlord or the landlord's employees or agents.
     (2) ☒ this action is solely for nonpayment of rent (Code Civ. Proc., § 1161(2)).

7.  The tenancy described in 6 *(complete (a) or (b))*
   a.  ☐ is **not** subject to the Tenant Protection Act of 2019 (Civil Code, § 1946.2). The specific subpart supporting why tenancy
        is exempt is *(specify):*                                     .
   b.  ☒ is subject to the Tenant Protection Act of 2019.

8.  *(Complete only if item 7b is checked. Check all applicable boxes.)*
   a.  ☒ The tenancy was terminated for at-fault just cause (Civil Code, § 1946.2(b)(1)).

   b.  ☐ The tenancy was terminated for no-fault just cause (Civil Code, § 1946.2(b)(2)) and the plaintiff *(check one)*

     (1) ☐ waived the payment of rent for the final month of the tenancy, before the rent came due, under
            section 1946.2(d)(2), in the amount of $                               .
     (2) ☐ provided a direct payment of one month's rent under section 1946.2(d)(3), equaling $
            to *(name each defendant and amount given to each):*

   c.  ☐ Because defendant failed to vacate, plaintiff is seeking to recover the total amount in 8b as damages in this action.

9.  a.  ☒ Defendant *(name each):* Alexandra Burger

     was served the following notice on the same date and in the same manner:

     (1) ☒ 3-day notice to pay rent or quit       (5) ☐ 3-day notice to perform covenants or quit
     (2) ☐ 30-day notice to quit                        *(not applicable if item 7b checked)*
     (3) ☐ 60-day notice to quit                   (6) ☐ 3-day notice to quit under Civil Code, § 1946.2(c)
     (4) ☐ 3-day notice to quit                        Prior required notice to perform covenants served *(date):*
                                                   (7) ☐ Other *(specify):*                                    .

**COMPLAINT — UNLAWFUL DETAINER**
CEB Essential<br>ceb.com Forms                                        25-3271406

UD-100

| PLAINTIFF: St. Moritz Lessee #1 LLC; St. Moritz Lessee #2 LLC<br>DEFENDANT: Alexandra Burger | CASE NUMBER: |
|---|---|

9. b. (1) On (date):  09/17/2025       the period stated in the notice checked in 9a expired at the end of the day.
    (2) Defendants failed to comply with the requirements of the notice by that date.
  c. All facts stated in the notice are true.
  d. [X] The notice included an election of forfeiture.
  e. [X] A copy of the notice is attached and labeled Exhibit 2. *(Required for residential property. See Code Civ. Proc., § 1166. When Civil Code, § 1946.2(c), applies and two notices are required, provide copies of both.)*
  f. [ ] One or more defendants were served (1) with the prior required notice under Civil Code, § 1946.2(c), (2) with a different notice, (3) on a different date, or (4) in a different manner, as stated in Attachment 10c. *(Check item 10c and attach a statement providing the information required by items 9a–e and 10 for each defendant and notice.)*

10. a. [X] The notice in item 9a was served on the defendant named in item 9a as follows:
    (1) [ ] By personally handing a copy to defendant on (date):
    (2) [ ] By leaving a copy with (name or description):
       a person of suitable age and discretion, on (date):        at defendant's
       [ ] residence   [ ] business   AND mailing a copy to defendant at defendant's place of residence
       on (date):        because defendant cannot be found at defendant's residence or usual place of business.
    (3) [X] By posting a copy on the premises on (date):  09/12/2025
       [X] AND giving a copy to a person found residing at the premises AND mailing a copy to defendant at the premises
       on (date):  09/12/2025
       (a) [ ] because defendant's residence and usual place of business cannot be ascertained OR
       (b) [X] because no person of suitable age or discretion can be found there.
    (4) [ ] *(Not for 3-day notice; see Civil Code, § 1946, before using)* By sending a copy by certified or registered mail addressed to defendant on (date):
    (5) [ ] *(Not for residential tenancies; see Civil Code, § 1953, before using)* In the manner specified in a written commercial lease between the parties
  b. [ ] (Name):
    was served on behalf of all defendants who signed a joint written rental agreement.
  c. [ ] Information about service of notice on the defendants alleged in item 9f is stated in Attachment 10c.
  d. [ ] Proof of service of the notice in item 9a is attached and labeled Exhibit 3.

11. [ ] Plaintiff demands possession from each defendant because of expiration of a fixed-term lease.

12. [X] At the time the 3-day notice to pay rent or quit was served, the amount of **rent due** was $     3,496.00

13. [X] The fair rental value of the premises is $     116.53 per day.

14. [ ] Defendant's continued possession is malicious, and plaintiff is entitled to statutory damages under Code of Civil Procedure section 1174(b). *(State specific facts supporting a claim up to $600 in Attachment 14.)*

15. [X] A written agreement between the parties provides for attorney fees.

16. [ ] Defendant's tenancy is subject to the local rent control or eviction control ordinance of *(city or county, title of ordinance, and date of passage):*



    Plaintiff has met all applicable requirements of the ordinances.

17. [ ] Other allegations are stated in Attachment 17.

18. Plaintiff accepts the jurisdictional limit, if any, of the court.

**COMPLAINT — UNLAWFUL DETAINER**

CEB | Essential
ceb.com | Forms

25-3271406

**UD-100**

| | |
|---|---|
| PLAINTIFF: St. Moritz Lessee #1 LLC; St. Moritz Lessee #2 LLC<br>DEFENDANT: Alexandra Burger | CASE NUMBER: |

**19. PLAINTIFF REQUESTS**
   a. possession of the premises.
   b. costs incurred in this proceeding:
   c. [X] past-due rent of $     3,496.00
   d. [X] reasonable attorney fees.
   e. [X] forfeiture of the agreement.

   f. [ ] damages in the amount of waived rent or relocation assistance
       as stated in item 8: $
   g. [X] damages at the rate stated in item 13 from
       date: 10/03/2025
       for each day that defendants remain in possession through entry of judgment.
   h. [ ] statutory damages up to $600 for the conduct alleged in item 14.
   i. [ ] other (specify):

**20.** [X] Number of pages attached (specify): 3

**UNLAWFUL DETAINER ASSISTANT** (Bus. & Prof. Code, §§ 6400–6415)

**21.** [X] (Complete in all cases.) An unlawful detainer assistant   [X] did **not**   [ ] did
for compensation give advice or assistance with this form. (If declarant has received any help or advice for pay from an unlawful detainer assistant, complete a–f.)

   a. Assistant's name:
   b. Street address, city, and zip code:

   c. Telephone no.:
   d. County of registration:
   e. Registration no.:
   f. Expires on (date):

Date: 10/01/2025

Danielle T. Kussler, SBN 180144        ▶ /s/ Danielle T. Kussler
     (TYPE OR PRINT NAME)                  (SIGNATURE OF PLAINTIFF OR ATTORNEY)

**VERIFICATION**

(Use a different verification form if the verification is by an attorney or for a corporation or partnership.)

I am the plaintiff in this proceeding and have read this complaint. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

                             ▶ See attached verification
     (TYPE OR PRINT NAME)                  (SIGNATURE OF PLAINTIFF)

CEB Essential
ceb.com Forms                       25-3271406

## VERIFICATION

I, the undersigned, declare:

That I am the attorney for the Plaintiff in this action and I make this verification for and on behalf of the party because:

the Plaintiff is absent from the County of Orange, California, where I have my office. I have read the attached Complaint and Supplemental Allegations for Unlawful Detainer and know its contents. I am informed and believe, and on that ground allege, that the matters stated in it are true.

Executed on October 1, 2025 at Irvine, California. I declare under penalty of perjury that the foregoing is true and correct.

Danielle T. Kussler, SBN 180144
KIMBALL, TIREY & ST. JOHN, LLP
Attorneys for Plaintiff

# NOTICE TO PAY RENT OR QUIT

To: Alexandra Burger

and all other in possession of the premises located at:

**23411 Summerfield Apt 005D Aliso Viejo, CA 92656**

**WITHIN THREE (3) DAYS, excluding Saturdays and Sundays and other judicial holidays, after the service on you of this notice on Friday, September 12, 2025, you are hereby required to do one of the following:**

(1) Pay the delinquent rent of the premises described herein, of which you now hold possession, as follows:

| Date Amount Became Due | Amount |
|---|---|
| September 3, 2025 | $3,496.00 |

**Total Delinquent Rent: $3,496.00**

Landlord reserves the right to pursue any amounts not included in this notice in accordance with the law.

Payment must be delivered as follows:

☒ By mail to: **23411 Summerfield, Aliso Viejo, CA 92656**
☒ By delivering in person to: **Jennifer Tetley** or any available personnel at **23411 Summerfield, Aliso Viejo, CA 92656** between the hours of **9:00 a.m. to 6:00 p.m.** on the following days of the week **Monday through Saturday; and 12:00pm to 5:00 p.m. Sunday.** Said employee may be reached by telephone at **949-362-6000.**
☒ To the 24-hour drop box located at the Leasing Office during non-business hours at **23411 Summerfield, Aliso Viejo, CA 92656.**
☒ *PAYMENT MUST BE MADE BY CASHIER'S CHECK. NO PERSONAL CHECKS OR ONLINE PAYMENTS WILL BE ACCEPTED.*

Name of an Agent for Landlord: **Jennifer Tetley**
Telephone Number: **949-362-6000**

---

**EXHIBIT**

**2**

2. **Or deliver up possession of the premises described herein to St. Moritz Lessee #1
LLC, who/which is authorized to receive the same.**

If you fail to perform or otherwise comply with this Notice, the Owner/Agent does hereby elect to declare the forfeiture of your Rental Agreement under which you hold possession of the above-described premises and will institute legal proceedings against you to recover possession of said premises and to recover all delinquent rent demanded herein, court costs and attorneys' fees as permitted by law.

Dated: September 12, 2025

By: Jennifer Terrey
Agent for Landlord/Owner

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

2040 Main Street, Suite 500
Irvine, CA 92614

A true and correct copy of the foregoing document entitled (*specify*): NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l); SUPPLEMENTAL NOTICE OF HEARING TO BE HELD REMOTELY USING ZOOMGOV AUDIO AND VIDEO; DECLARATION RE: TELEPHONIC NOTICE REGARDING MOTION FOR RELIEF FROM BANKRUPTCY SHORTENED TIME HEARING
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/16/2025_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee (SA) (US Trustee): ustpregion16.sa.ecf@usdoj.gov
Thomas H Casey (TR) (Trustee): msilva@tomcaseylaw.com
Michael D Franco (Debtor's Attorney): francolawfirm@hotmail.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) 10/16/2025_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Alexandra Lauren Burger (Debtor): 23411 Summerfield 5D, Aliso Viejo, CA 92656
Honorable Scott C. Clarkson: United States Bankruptcy Court / Central District of California, Ronald Reagan Federal Building and Courthouse, 411 West Fourth Street, Suite 5130 / Courtroom 5C, Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/16/2025 | Monica Betancourt | /s/ Monica Betancourt |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**